<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

July 31, 2023

Argia J. DiMarco, Esq.
Christopher J. Dalton, Esq.
Melissa Jean Bayly, Esq.
Nicholas Pradaxay, Esq.
Buchanan Ingersoll & Rooney, PC
550 Broad Street
Suite 810
Newark, NJ 07102
*Counsel for Defendant BMW of North America, LLC*

Olimpio Lee Squitieri, Esq.
Squitieri & Fearon, LLP
305 Broadway
7th Floor
New York, NY 10007
*Counsel for Plaintiff*

## <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

**Re:**   *Peter Grayson, on behalf of himself and all others similarly situated v. BMW of North America, LLC and Bayerische Motoren Werke Aktiengesellschaft AG Munich Germany*
**Civil Action No. 22-06103 (SDW) (MAH)**

Counsel:

Before this Court is Defendant BMW of North America, LLC's ("Defendant" or "BMW") Motion to Dismiss the Complaint and Compel Arbitration pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. (D.E. 10.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's Motion to Dismiss the Complaint and Compel Arbitration is **GRANTED**.

## I. BACKGROUND & PROCEDURAL HISTORY

BMW is a limited liability company organized under Delaware law engaged in the distribution of automobiles in the United States. (D.E. 1 ¶¶ 6–7.) In May of 2014, Peter Grayson ("Plaintiff"), a New Jersey resident, purchased a new 2014 428i xDrive Coupe (the "Vehicle") from Circle BMW in New Jersey. (¶ 5.) Plaintiff's Vehicle featured Connected Drive/BMW Assist ("CD/BA"). (*Id.* ¶¶ 1, 42–44.) CD/BA "Telematics Control Units" ("Telematics" or "Telematics Units") are "instruments [that] connect the BMW to internet service." (D.E. 1 ¶ 31.) CD/BA enables access to "features such as door unlock, enhanced roadside assistance, accident management[,] and message dictation." (*Id.* ¶ 43.) "Defendant marketed CD/BA Telematics as a permanent feature of the Vehicle," but by 2014 wireless carriers began to replace 3G service with 4G service and later 5G service. (*Id.* ¶¶ 44, 46, 48.) In time, the 3G CB/BA Telematics became obsolete because they were not capable of being retrofitted to advanced wireless generations. (*Id.* ¶¶ 51–52.) As wireless carriers moved to 4G and then 5G service, "[m]ost BMW's made before 2016" including Plaintiff's Vehicle, "lost Connected Drive features in February 2022 when 3G was phased out." (*Id.* ¶ 66.)

Plaintiff contends that he "did not get the benefit of the bargain [he] struck" because he purchased the Vehicle "under the mistaken belief that [his car's] CD/BA [T]elematics would work for the life of the [c]ar." (D.E. 1 ¶ 68.) Plaintiff alleges that "Defendant's misrepresentations and deceptive conduct in failing to truthfully disclose to prospective buyers that the [c]ars were 3G [o]nly caused Plaintiff and [putative] class members substantial injury in the form of price premiums and overpayments for products and diminished resale value and loss of [T]elematics benefits . . . ." (*Id.* ¶ 69.) Plaintiff alleges that a nationwide class includes "[a]ll persons who purchased or leased, anywhere in the United States, a [c]ar, with a CD/BA with 3G [o]nly [l]imitations." (*Id.* ¶ 18.)

On October 17, 2022, Defendant filed a four-count class action complaint alleging violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-2, *et seq.*, (Count I); breach of express warranty by description, N.J. Stat. Ann. § 12A:2-313(b), (Count II); violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(A), (Count III); and unjust enrichment, (Count IV). (D.E. 1 ¶¶ 100–38.) On January 30, 2023, Defendant filed the instant Motion to Compel Arbitration. (D.E. 10.) The parties thereafter completed timely briefing. (D.E. 13, 16.)

## II. STANDARD OF REVIEW

The FAA was enacted to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011) (noting that "our cases place it beyond dispute that the FAA was designed to promote arbitration"); 9 U.S.C. § 2 (providing that written arbitration agreements "shall be valid, irrevocable, and enforceable"). "The FAA federalizes arbitration law and 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

2

*Corp.*, 460 U.S. 1, 25 n.32 (1983)). Courts must refer parties to arbitration pursuant to an agreement to arbitrate "upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement." 9 U.S.C. § 3. To make such a determination, courts must examine whether (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted).

## III.  DISCUSSION

Defendant asserts that when Plaintiff purchased the Vehicle, he signed a BMW Assist Subscriber Agreement Contract ("Subscriber Agreement"), which includes an agreement to arbitrate disputes.[1] (D.E. 10-1 at 32–39; 10-2 at 7–8.[2]) Specifically, the Subscriber Agreement provides, in relevant part:

> **16. Arbitration.** IF A CONTROVERSY, DISPUTE, OR CLAIM, WHETHER BASED ON CONTRACT, TORT, STATUTE, OR OTHER LEGAL OR EQUITABLE THEORY (INCLUDING BUT NOT LIMITED TO ANY CLAIM OF FRAUD, MISREPRESENTATION, OR FRAUDULENT INDUCEMENT) ARISING OUT OF OR RELATING TO THIS AGREEMENT, TO ANY BREACH HEREOF, OR TO ANY TORTUOUS [sic], CONDUCT OCCURING, WHETHER BY ACTION OR INACTION, IN THE PERFORMANCE OF OR FAILURE TO PERFORM ANY OBLIGATION HEREUNDER, YOU AGREE THAT THE MATTER SHALL BE SETTLED BY INDEPENDENT ARBITRATION INVOLVING A NEUTRAL ARBITRATOR AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES, AS MODIFIED BY THIS AGREEMENT AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. ARBITRATION IS NOT A COURT PROCEEDING. THE RULES OF ARBITRATION DIFFER FROM THE RULES OF COURT. THERE IS NO JUDGE AND JURY IN AN ARBITRATION PROCEEDING. NO ARBITRATOR HAS AUTHORITY TO AWARD RELIEF IN EXCESS OF WHAT

---

[1] This Court may consider the Subscriber Agreement because it is "integral to . . . the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[2] Citations of page numbers from the parties' briefs refer to the D.E. filing page numbers, not to each document's original page numbers.

3

>THIS AGREEMENT PROVIDES. IN THE EVENT THE FOREGOING ARBITRATION REQUIREMENTS DO NOT APPLY, YOU WAIVE TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY AND A JUDGE WILL DECIDE ANY AND ALL DISPUTES.
>
>. . . .

(D.E. 10-1 at 39.)

Plaintiff does not contest the validity of the arbitration clause in the Subscriber Agreement. (*See* D.E. 13). Instead, Plaintiff challenges the scope of the Subscriber Agreement and urges the Court to find that the Agreement is not at issue because the Telematics Unit is a physical component of the vehicle and is not covered by the Agreement. (D.E. 13 at 5–12.) When reviewing the allegations in the Complaint, however, Plaintiff's argument is unavailing.

"When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Importantly, there is a heavy presumption in favor of enforcing arbitration clauses, and arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). Furthermore, "doubts should be resolved in favor of coverage." *Id.* (quoting *United Steelworkers of Am.*, 363 U.S. at 582–83).

Here, Plaintiff has not shown with "positive assurance" that his claims are outside the scope of the arbitration agreement. Plaintiff's Complaint discusses the "sunsetting of 3G and loss of CD/BA features in the cars"—specifically the loss of the services that the Telematics device enables. (D.E. 1 at 14, ¶¶ 62–66.) While Plaintiff asserts that "[t]his action concerns the operability of a piece of hardware that is a physical part of BMW cars . . . known as 'telematics control unit,'" (D.E. 13 at 5), which is also "known as the CD/BA," (D.E. 1 ¶ 34), the action ostensibly pertains to the loss of service due to the inability of the Telematics Unit to adapt to upgraded wireless service. (*See generally* D.E. 1.) As such, the facts and allegations implicate the Service Agreement, as the loss of service is inextricably intertwined throughout the allegations. (*Id.*) Further, the Complaint concerns Defendant's alleged misrepresentations concerning the ability of the vehicle to connect to certain wireless services, (*see* D.E. 1 ¶¶ 69,73, 76–83), and the Service Agreement arbitration clause explicitly states that claims of "FRAUD, MISREPRESENTATION, OR FRAUDULENT INDUCEMENT" are subject to arbitration, (D.E. 10-1 at 39). Plaintiff's claims are thus within the scope of the arbitration agreement. *See Martindale v. Sandvik, Inc.*, 800 A.2d 872, 883 (2002) (finding that the arbitration agreement was applicable when the "language . . . was clear and unambiguous . . . [and] was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action.") (D.E. 1 ¶¶ 2–3, 70–71.)

At bottom, the Complaint does not solely allege that there is a defective physical vehicle part at issue, but rather alleges that a presumably functioning physical vehicle part can no longer enable a service Plaintiff desires to use because wireless carriers have upgraded their capabilities past the functional usage of the part, and that the service is unavailable because Defendant knowingly failed to design the part to be retrofittable to the new service.  These allegations specifically concern the loss of service in conjunction with the design of the part, and thus directly implicate the Service Agreement.  Consequently, this Court finds that Plaintiff's claims fall within the scope of the arbitration clause in the Service Agreement and will therefore grant Defendant's motion to refer the matter to arbitration and dismiss the Complaint.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Complaint and Refer the Matter to Arbitration is **GRANTED**.  An appropriate Order follows.

                                                /s/ Susan D. Wigenton
                                           SUSAN D. WIGENTON, U.S.D.J

Orig:   Clerk
cc:     Parties
        Michael A Hammer, U.S.M.J.